UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IESHA BROWN o/b/o K.R.,                     )
                                            )
              Plaintiff,                    )
                                            )
       vs.                                  )  Case No. 4:14CV1717 ACL
                                            )
CAROLYN W. COLVIN,                          )
Acting Commissioner of Social Security,     )
                                            )
              Defendant.                    )

## MEMORANDUM

Iesha Brown brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of

the Social Security Administration Commissioner's determination to cease disability benefits her

minor son, K.R., had previously been awarded for Supplemental Security Income (SSI) under Title

XVI of the Social Security Act.   K.R. was found disabled as of January 30, 2009, however,

following a Continuing Disability Review hearing it was determined that K.R.'s disability had

ceased as of January 1, 2012.

An Administrative Law Judge (ALJ) confirmed that the impairment K.R. had at the time of

the award of SSI benefits--severe attention deficit hyperactivity disorder, known as "ADHD"--no

longer met, medically equaled, or functionally equaled a listing.

This matter is pending before the undersigned United States Magistrate Judge, with

consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is

presented in the parties' briefs and is repeated here only to the extent necessary.

### I.  Procedural History

On October 28, 2008, Ms. Brown filed an application for Supplemental Security Income

(SSI) on behalf of K.R. ("Plaintiff").   (Tr. 128-30.)   Plaintiff was found to be disabled and the application was granted.   (Tr. 55-72.)

On January 11, 2012, the Social Security Administration ("SSA") notified Plaintiff that a determination had been made that his disability had ceased to exist as of January 1, 2012, and his benefits would be terminated on March 31, 2012.   (Tr. 52, 73-75.)   The notice indicated that the decision was based on the report of Alison Nash, M.D., and a report from the Office of Special Education.   (Tr. 73.)   In January 2013, this determination was upheld upon reconsideration by a Disability Hearing Officer.   (Tr. 77-88.)

Following an administrative hearing and in consideration of § 1614(a)(3)(C) of the Social Security Act, an ALJ concluded that Plaintiff's disability ended on January 1, 2012.   The ALJ's reasoning was set out in a written opinion dated August 26, 2013.   (Tr. 7-30.)   Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council of the SSA, which was denied on August 8, 2014.   (Tr. 1-4.)   Thus, the decision of the ALJ stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Plaintiff claims that the ALJ erred in failing to fully and fairly develop the record.   Plaintiff also argues that the ALJ's findings with regard to the six domains of functioning are not based upon substantial evidence.

## II.   The ALJ's Determination

The ALJ noted that the most recent favorable medical decision finding that Plaintiff was disabled is the determination dated January 30, 2009 ("comparison point decision" or "CPD"). (Tr. 14.)   At the time of the CPD, Plaintiff had the following medically determinable impairment: ADHD.   *Id.*   This impairment was found to functionally equal the listings.   *Id.*   Specifically, it was found at the time of the CPD that Plaintiff's ADHD resulted in marked limitations in his

ability to Attend and Complete Tasks and Interact and Relate with Others.

The ALJ indicated that ADHD is presently Plaintiff's only medically determinable impairment.  *Id.*  The ALJ found that medical improvement occurred as of January 1, 2012.  (Tr. 15.)  The ALJ stated that Plaintiff's ADHD no longer caused the severe academic problems it once had, as Plaintiff no longer required special education services as of January 1, 2012.  (Tr. 17.)  The ALJ acknowledged Plaintiff was experiencing behavioral problems in school.  *Id.* She stated that she had considered Plaintiff's behavioral problems in school, although the causal link between Plaintiff's ADHD and his behavioral problems in school was not established in this case.  *Id.*  The ALJ stated that the overall medical records demonstrate medical improvement as of January 2, 2012.  *Id.*

The ALJ stated that Plaintiff was born on November 12, 2003, and was a school-age child as of January 1, 2012.  (Tr. 17.)  The ALJ determined that, since January 1, 2012, Plaintiff's condition had not met or medically equaled a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.925 and 416.926).  *Id.*

The ALJ further found that, since January 1, 2012, the impairment that Plaintiff had at the time of the CPD has not functionally equaled a listing.  *Id.*  Specifically, the ALJ found that Plaintiff had no limitation in his ability to Acquire and Use Information; less than marked limitations in his ability to Attend and Complete Tasks; less than marked limitations in his ability to Interact and Relate with Others; less than marked limitations in his ability to Move About and Manipulate Objects; no limitations in his ability to Care for Himself; and no limitations in his Health or Physical Well-Being.  (Tr. 17-24.)  In making this determination, the ALJ discussed the opinions of Licensed Psychologist Alison Burner, state agency psychologist Kyle DeVore, treating pediatrician Alison Nash, and state agency pediatrician Craig Speigel.  *Id.*  The ALJ

further found that, since January 1, 2012, Plaintiff has not had an impairment or combination of impairments that functionally equals the listings. (Tr. 25.) Finally, the ALJ concluded that Plaintiff's disability ended as of January 1, 2012, and Plaintiff has not become disabled again since that date. *Id.*

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."

*Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted).   *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B.   Determination of Disability**

The Social Security Administration has prescribed a three-step sequential evaluation for making a periodic review of a child's eligibility for disability benefits.   20 C.F.R. § 416.994a(b). First, it must be determined if there has been any "medical improvement" in the child's condition. *Id.* at § 416.994a(b)(1).   Medical improvement is defined as "any decrease in the medical severity of [the child's] impairment(s) which was present at the time of the most recent favorable decision that [the child] w[as] disabled or continued to be disabled ... based on changes (improvement) in the symptoms, signs, or laboratory findings associated with [the child's] impairment(s)."   *Id.* at § 416.994a(c).   If there has been no medical improvement, the child continues to be disabled (unless exceptions not applicable here apply).   *Id.* § 416.994a(b)(1).

Second, if there has been medical improvement, it must be determined whether the impairment(s) that was considered at the time of the most recent favorable determination or decision still meets or equals the severity of the Listed impairment it met or equaled at that time. *Id.* at § 416.994a(b)(2).   If the impairment does, the child's disability will be found to continue (unless exceptions not applicable here apply).   *Id.*   If the impairment does not, the sequential evaluation will proceed to the next step.   *Id.*

Third, it must be determined whether the child is currently disabled under the rules for determining eligibility in initial disability claims for children.   *Id.* at § 416.994a(b)(3). In determining whether an SSI claimant under the age of 18 is under a disability, a three-step sequential evaluation process is used which is comparable to the five-step sequential evaluation process utilized for adults.   20 C.F.R. § 416.924(a) (2006).

The first step is a determination whether the child is engaged in substantial gainful activity. *Id.,* § 416.924(b). If so, benefits are denied; if not, the evaluation continues to the next step. The second step involves a determination whether the impairment or combination of impairments is severe, *i.e.,* more than a slight abnormality that causes no more than minimal functional limitations. *Id.,* § 416.924(c). If not, benefits are denied; if so, the evaluation continues. The third step involves a determination whether the child has impairment(s) that meet, medically equal, or functionally equal in severity a Listed impairment. *Id.,* § 416.924(d). If so, and if the duration requirement is met, benefits are awarded; if not, benefits are denied.

When determining functional limitations, 20 C.F.R. § 416.926a(a) provides that where a severe impairment or combination of impairments does not meet or medically equal any listing, the limitations will "functionally equal the listings" when the impairment(s) "result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." A limitation is "marked" when it "interferes seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). A limitation is "extreme" when it "interferes very seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3).

The ALJ considers how a claimant functions in activities in the following six domains: "(i) Acquiring and Using Information; (ii) Attending and Completing Tasks; (iii) Interacting and Relating to Others; (iv) Moving About and Manipulating Objects; (v) Caring for Yourself; and (vi) Health and Physical Well-Being." 20 C.F.R. § 416.926a(b)(1). Also, in assessing whether a claimant has "marked" or "extreme" limitations, an ALJ must consider the functional limitations from all medically determinable impairments, including any impairments that are not severe. 20 C.F.R. § 416.926a(a). Further, the ALJ must consider the interactive and cumulative effects of

the claimant's impairment or multiple impairments in any affected domain.   20 C.F.R. §

416.926a(c).

> 20 C.F.R. § 416.926a(e)(2) explains:
>
>> (i) We will find that you have a "marked" limitation in a domain when
>> your impairment(s) interferes seriously with your ability to
>> independently initiate, sustain, or complete activities. Your day-to-day
>> functioning may be seriously limited when your impairment(s)
>> limits only one activity or when the interactive and cumulative effects
>> of your impairment(s) limit several activities. "Marked" limitation
>> also means a limitation that is "more than moderate" but "less than
>> extreme." It is the equivalent of the functioning we would expect to
>> find on standardized testing with scores that are at least two, but less
>> than three, standard deviations below the mean.
>
> 20 C.F.R. § 416.926a(3) further explains:
>
>> (i) We will find that you have an "extreme" limitation in a
>> domain when your impairment(s) interferes very seriously with
>> your ability to independently initiate, sustain, or complete
>> activities. Your day-to-day functioning may be very seriously
>> limited when your impairment(s) limits only one activity or
>> when the interactive and cumulative effects of your
>> impairment(s) limit several activities. "Extreme" limitation
>> also means a limitation that is "more than marked." "Extreme"
>> limitation is the rating we give to the worst limitations.
>> However, "extreme limitation" does not necessarily mean a
>> total lack or loss of ability to function. It is the equivalent of
>> the functioning we would expect to find on standardized testing
>> with scores that are at least three standard deviations below the
>> mean.

## IV.   Discussion

Plaintiff claims that the ALJ erred in failing to fully and fairly develop the record.

Plaintiff also argues that the ALJ's findings with regard to the six domains of functioning are not

based upon substantial evidence.   The undersigned will discuss Plaintiff's claims in turn.

## IV.A.  Development of the Record

Plaintiff argues that the ALJ failed to obtain records from specialists at Washington University, updated records from treating physician Dr. Nash, and recent educational records. Plaintiff also notes that the ALJ denied Plaintiff's mother's request for additional time to get an attorney.

As an initial matter, Plaintiff's statement that the ALJ denied Plaintiff's mother's request for additional time to obtain an attorney is inaccurate.   Plaintiff's mother, Ms. Brown, appeared *pro se* at Plaintiff's administrative hearing.   Ms. Brown did express a desire for representation by an attorney, and indicated that she had tried unsuccessfully to obtain representation.   (Tr. 36.) The ALJ stated that she would grant Ms. Brown additional time to find an attorney, and informed Ms. Brown that she would continue the hearing.   (Tr. 38.)   Ms. Brown, however, indicated that she wished to proceed with the hearing without representation.   *Id.*   The ALJ accordingly proceeded with the hearing.

The ALJ remarked that she only had medical records up to October 2012 and education records up to March of 2012.   (Tr. 35, 48.)   Ms. Brown stated that Plaintiff's pediatrician, Dr. Nash, had referred Plaintiff to specialists at Washington University, Drs. Nichols and Peaken. (Tr. 35.)   Ms. Brown testified that Plaintiff had been seeing Drs. Nichols and Peaken for the past year for medication adjustments.   *Id.* The ALJ instructed Ms. Brown to obtain these medical records, as well as educational records from Plaintiff's new school.   (Tr. 39.)   Ms. Brown stated that she would request these records.   (Tr. 48.)   The ALJ informed Plaintiff that July 26, 2013 was the last date on which the file would be open for the submission of new records.   (Tr. 49.)

Ms. Brown did not submit any additional records.   The record reveals that the ALJ attempted to obtain records from Washington University and from Plaintiff's current school, Ames

Visual & Performing Arts. (Tr. 392-96.) The ALJ followed up by mail and telephone, but records were never provided. *Id.*

A social security hearing is a non-adversarial proceeding, which requires the ALJ to fully and fairly develop the record. *Ellis v. Barnhart,* 392 F.3d 988, 994 (8th Cir. 2005). Where, as here, the claimant appears without the benefit of a lawyer, the ALJ has a heightened duty to develop the record. *Wingert v. Bowen,* 894 F.2d 296, 298 (8th Cir. 1990); *Richardson v. Astrue*, No. 2:07CV17DDN, 2008 WL 3982064, * 19 (E.D. Mo. Aug. 22, 2008). The ALJ, however, is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record. *Clark v. Shalala,* 28 F.3d 828, 830–31 (8th Cir. 1994). "Unfairness or prejudice resulting from an incomplete record—whether because of lack of counsel or lack of diligence on the ALJ's part—requires a remand." *Highfill v. Bowen,* 832 F.2d 112, 115 (8th Cir. 1988). The relevant inquiry thus is whether the plaintiff was prejudiced or treated unfairly by how the ALJ did or did not develop the record. *Hutchings v. Astrue,* No. 4:06CV1621 TIA, 2008 WL 4488906, at *9 (E.D. Mo. Sept. 29, 2008).

In this case, the ALJ left the record open for Ms. Brown to submit additional records. The ALJ also made considerable efforts to obtain these records by requesting them in writing and then following up by mail and telephone. Under these circumstances, it cannot be found that Plaintiff was treated unfairly by the ALJ. It is also notable that Plaintiff has not submitted these records or otherwise informed the Court of their significance despite being represented by counsel at the Appeals Council stage and in the instant action. *See Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) ("[I]t is of some relevance to us that the lawyer did not obtain (or, so far as we know, try to obtain) the items that are now being complained about."). Further, as will be discussed in more

detail below, the ALJ had before her significant evidence of Plaintiff's impairment.   Thus, Plaintiff has not demonstrated prejudice due to the absence of additional records.

**IV.B.   Functional Equivalence**

Plaintiff next argues that the ALJ's functional equivalence determination is not based upon substantial evidence.   Plaintiff specifically challenges the ALJ's findings with regard to the following domains:   Attending and Completing Tasks, Interacting and Relating with Others, and Caring for Yourself.   Plaintiff also argues that the ALJ erred in evaluating the opinions of Ms. Burner and Dr. DeVore when determining functional equivalence.

Plaintiff saw Ms. Burner, a licensed psychologist, for a psychological consultation at the request of the state agency on September 19, 2012.   (Tr. 381-84.)   Ms. Burner summarized Plaintiff's school records.   She noted that Plaintiff was in third grade at that time and was not receiving special education services.   (Tr. 381.)   Plaintiff had previously qualified for special education as a "young child with a developmental delay in the area of speech" at the age of four. *Id.*   When Plaintiff was reevaluated for a school aged diagnosis, he was found to be educationally non-disabled, and was found to have a "superior level of intelligence, above average academic functioning, and no educationally interfering symptoms of ADHD."   *Id* .   Plaintiff was taking Concerta.[1]   *Id.*   Plaintiff's mother reported that, without medication, Plaintiff was "real hyper," has a very short attention span, is impulsive, cannot sit still, cannot concentrate, forgets multi-step directions, and is easily frustrated.   (Tr. 382.)   With medication, Plaintiff's symptoms are controlled.   *Id.*   During the mental status examination, Plaintiff was able to sit quietly.   *Id.*   No symptoms of ADHD were observed.   *Id.*   Plaintiff was cooperative throughout the interview, his memory was intact, his abstract thinking was within normal limits, and his insight and judgment

[1]Concerta is a stimulant medication indicated for the treatment of ADHD.   *See* WebMD, http://www.webmd.com/drugs (last visited January 25, 2016).

were within the high average range.  *Id.*   Ms. Burner stated that Plaintiff's attention and

concentration were adequate in the examination and symptoms of ADHD were not observed.  *Id.*

No difficulties were reported in adaptive functioning.  *Id.*   Plaintiff reported that he was able to

care for himself and his hygiene; and do age appropriate chores with supervision and reminders,

because he gets distracted from the task at hand.  (Tr. 382-83.)  Plaintiff also reported that he has

numerous friends and enjoys many activities.  (Tr. 383.)  Ms. Burner found that Plaintiff was of

at least average intellectual functioning.  *Id.*   Ms. Burner concluded that, although no symptoms

of ADHD were observed in the examination, Plaintiff appeared to meet DSM criteria for diagnosis

of ADHD based on parental report.  *Id.*   She stated that, with medication and treatment, his

symptoms are reportedly controlled; without medication, he will likely have impulsivity and

hyperactivity.  *Id.*   Ms. Burner diagnosed Plaintiff with ADHD, combined type, by report; and

assessed a GAF score of 75.[2]  *Id.*   Ms. Burner expressed the opinion that Plaintiff had no

impairment with medication in activities of daily living; no impairment with medication in social

functioning, and mild impairment without medication due to his impulsivity; no impairment with

medication in his concentration, persistence, or pace, and mild impairment due to ADHD without

medication; and no decompensation in a school setting.  *Id.*   Ms. Burner noted that, because

Plaintiff does not receive special education and was diagnosed non-disabled, it indicates that

symptoms of ADHD do not interfere with educational achievement.  *Id.*

Dr. DeVore, a state agency psychologist, completed a Child Disability Evaluation Form on

January 4, 2012.  (Tr. 325-30.)  Dr. DeVore found that medical improvement had occurred.  (Tr.

---

[2]A GAF score of 71 to 80 is indicates that, "[i]f symptoms are present, they are transient and
expectable reactions to psycho-social stressors (e.g., difficulty concentrating after family
argument); no more than slight impairment in social, occupational, or school functioning (e.g.,
temporarily falling behind in schoolwork)."  *See American Psychiatric Ass'n., Diagnostic and
Statistical Manual of Mental Disorders* 34 (Text Revision 4th ed. 2000) ("*DSM IV-TR*").

325.)   Dr. DeVore expressed the opinion that Plaintiff had no limitations in his abilities to Acquire and Use Information, Attend and Complete Tasks, Move About and Manipulate Objects, Care for Himself, and Health and Physical Well-Being.   (Tr. 327-28.)   Dr. DeVore found that Plaintiff had less than marked limitations in his ability to Interact and Relate with Others.   (Tr. 327.)   As support for his opinions, Dr. DeVore cited the following findings from Dr. Nash's treatment notes: On September 6, 2011, Dr. Nash noted that Ms. Brown had taken Plaintiff off Concentra for the summer and Plaintiff started school on August 15, 2011 with no medication.   (Tr. 351.)   Plaintiff has an IQ of over 140 and attends a gifted program.   *Id.*   Plaintiff says inappropriate things at school and has been getting misdemeanor conduct reports.   *Id.*   Ms. Brown put him back on medication and he has done well since starting medication.   *Id.*   Dr. Nash discussed with Ms. Brown the importance of Plaintiff being on medication daily.   *Id.*

The ALJ has the role of resolving conflicts among the opinions of various treating and examining physicians.   *Pearsall v. Massanari,* 274 F.3d 1211, 1219 (8th Cir. 2001).   The ALJ may reject the conclusions of any medical expert, whether hired by the government or claimant, if they are inconsistent with the record as a whole.   *Id.*   Normally, the opinion of the treating physician is entitled to substantial weight.   *Casey v. Astrue,* 503 F.3d 687, 691 (8th Cir. 2007). The opinion of a consulting physician, who examines a claimant once, or not at all, generally receives very little weight.   *Singh v. Apfel,* 222 F.3d 448, 452 (8th Cir. 2000).

Still, the opinion of the treating physician is not conclusive in determining disability status, and must be supported by medically acceptable clinical or diagnostic data.   *Casey,* 503 F.3d at 691.   The ALJ may credit other medical evaluations over the opinion of a treating physician if the other assessments are supported by better or more thorough medical evidence, or when the treating physician's opinions are internally inconsistent.   *Guilliams v. Barnhart,* 393 F.3d 798, 803 (8th

Cir.2005); *Cantrell v. Apfel,* 231 F.3d 1104, 1107 (8th Cir. 2000).

The undersigned will discuss the ALJ's findings with regard to the specific domains Plaintiff challenges—Attending and Completing Tasks, Interacting and Relating with Others, and Caring for Yourself. Plaintiff does not dispute the ALJ's findings that Plaintiff has no limitations in the domains of Acquiring and Using Information, Moving About and Manipulating Objects, or Health and Physical Well-Being, and these findings are supported by the record. The Court finds that the ALJ's determinations that Plaintiff has less than marked limitations in the domains of Attending and Completing Tasks and Caring for Yourself are supported by substantial evidence. In order for there to be a conclusion that Plaintiff's impairments functionally meet a listing, there would have to be evidence that Plaintiff has an "extreme" limitation in the domain of Interacting and Relating with Others. Because the record contains no evidence that Plaintiff has an "extreme" limitation in that domain, the ALJ's decision will be affirmed.

### IV.B.i. Attending and Completing Tasks

The ALJ found that Plaintiff had less than marked limitations in Attending and Completing Tasks. (Tr. 20.) Plaintiff argues that, in making this finding, the ALJ improperly weighed the opinions of Ms. Burner and Dr. DeVore.

The domain of Attending and Completing Tasks considers how well a child is able to focus and maintain attention, and how well he or she is able to begin, carry thorough, and finish activities, including the mental pace at which he or she performs activities and the ease of changing activities. 20 C.F.R. § 416.926a(h). School age children (ages six to twelve) should be able to focus their attention in a variety of situations in order to follow directions, remember and organize their school materials, and complete classroom and homework assignments. They should be able to concentrate on details and not make careless mistakes in their work, be able to change activities

or routines without distracting themselves or others, sustain attention well enough to participate in group sports, and complete a transition task without extra reminders and accommodation. *Id.* at § 416.926a(h)(iv).

Examples of limited functioning in Attending and Completing Tasks include situations where the claimant: (i) is easily startled, distracted, or overreactive to sounds, sights, movements, or touch; (ii) is slow to focus on, or fail to complete activities of interest to you; (iii) repeatedly becomes sidetracked from his activities or frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones he is capable of completing; or (v) requires extra supervision to keep him engaged in an activity. 20 C.F.R. § 416.926a(h)(3)(i)-(v).

The ALJ noted that Plaintiff formerly required special education classes for his impairments, including memory deficits, but only required special education classes up to sixty percent of the time. (Tr. 20, 156.) The ALJ stated that Plaintiff no longer requires any special education classes. (Tr. 20, 166.) She pointed out that Ms. Brown stated in 2012 that when Plaintiff is compliant with his Concerta and Intuniv,[3] his ADHD is somewhat controlled. (Tr. 20, 342, 382.) The ALJ acknowledged that Ms. Brown reported that, without medication, Plaintiff has a very short attention span, cannot sit still, and is impulsive. *Id.*

The ALJ next discussed the opinion evidence as follows:

> When Ms. Burner examined the child, she noted the claimant sat quietly and did not meet the criteria for an attention deficit hyperactivity disorder diagnosis. She further emphasized the claimant had no concentration, persistence, and pace limitations when medicated and only mild concentration, persistence, and pace limitations when not medicated (Exhibit 5J5). The child had to change schools, but this resulted more from behavioral problems than limitations to his first two domains. The undersigned gives

---

[3]Intuniv is a non-stimulant drug indicated for the treatment for ADHD. *See* WebMD, http://www.webmd.com/drugs (last visited January 25, 2016).

some weight to the opinion of Ms. Burner in this domain as her opinion is consistent with the other medical and educational reports. However, in this domain, Dr. DeVore stated the child had no limitations. Dr. DeVore emphasized the child had not required much additional treatment or had any additional behavioral problems once the claimant was restarted on his medications (Exhibit 1F3). The undersigned gives great weight to these opinions. Although later discipline problems occurred, the undersigned finds the child's limitation in this domain are less than marked.

(Tr. 20.)

Plaintiff first argues that the ALJ mischaracterized Ms. Burner's opinion by stating that Ms. Burner found that Plaintiff did not meet the criteria for a diagnosis of ADHD. Plaintiff is correct that Ms. Burner found that Plaintiff "*does* appear to meet DSM criteria for diagnosis of ADHD based on parental report." (Tr. 383) (emphasis added) Ms. Burner also found "no symptoms of ADHD were observed in today's exam." *Id.* The ALJ either made a typographical error in her opinion in that she intended to write that Plaintiff "did" meet the DSM criteria for ADHD, or she intended to convey that Plaintiff did not meet DSM criteria for ADHD based on the symptoms Ms. Burner observed during the examination. In either case, the ALJ's error is harmless. The ALJ found that Plaintiff's ADHD was a severe medically determinable impairment. (Tr. 14.) The ALJ accurately conveyed Ms. Burner's findings on examination, and her opinion that Plaintiff had no impairment in concentration, persistence or pace with medication and only mild impairment without medication. (Tr. 16, 20.)

Plaintiff also argues that Ms. Burner's opinions were not based on any evidence and that Ms. Burner did not review the medical evidence. The undersigned disagrees. Ms. Burner indicated at the beginning of her "Psychological Consultation" that she had conducted a "record review." (Tr. 381.) It is true that Ms. Burner did not identify the specific medical records she reviewed. Ms. Burner does, however, reference Plaintiff's medical history and notes that it is

"remarkable for diagnosis of ADHD, asthma, and allergies." (Tr. 381.) Ms. Burner also discusses Plaintiff's school records. She refers to a report wherein Plaintiff "was found to be educationally nondisabled." *Id*. The conclusion that Plaintiff was non-disabled and ineligible to receive special education services was made in the January 15, 2010, "Report of Results of Psychological-Educational Assessment" that was completed by evaluators in the Saint Louis Public Schools ("Report). (Tr. 155-68.)

Plaintiff claims that Ms. Burner's finding that Plaintiff's symptoms of ADHD do not interfere with educational achievement because he does not receive special education services is unsupported. Plaintiff's argument lacks merit. The Report acknowledges Plaintiff's diagnosis of ADHD and indicates Plaintiff's teachers had reported concerns in the areas of aggression, depression, and adaptability. (Tr. 166.) The Report then states: "However, these behaviors do not appear to be so aberrant as to significantly impact [K.M.]' school performance. This is reflected in his daily classroom performance academically (class work, report card). [K.M.] has no academic concerns at this time." *Id.* The Report supports Ms. Burner's finding that Plaintiff's symptoms of ADHD did not affect his school performance. Ms. Burner's opinions are also supported by her clinical examination, during which she observed no symptoms of ADHD. (Tr. 383.)

Plaintiff next argues that the ALJ's determination with regard to this domain is not supported by the evidence because Dr. DeVore and Ms. Burner both found that Plaintiff had no limitations in this domain with medication, yet the ALJ found that Plaintiff had less than marked limitations. It is unclear how the ALJ can be faulted for finding greater limitations than those found by the consulting providers.

Regardless of Plaintiff's argument that the ALJ's finding is not identical to those of the consulting providers, the ALJ's determination is supported by substantial evidence. The ALJ properly weighed the opinions of Dr. DeVore and Ms. Burner. Her determination is consistent with the findings set out in the Report. The ALJ's finding is also supported by Plaintiff's treating pediatrician Dr. Nash. On September 6, 2011, Dr. Nash found that Plaintiff had been doing well in school since starting medication. (Tr. 351.) Additionally, Dr. Nash submitted a form to the SSA on November 8, 2011, in which she stated that Plaintiff was "fully able" to engage in age-appropriate activities in an age-appropriate manner on a sustained basis when he is taking medication. (Tr. 350.) It was proper for the ALJ to consider whether Plaintiff's impairment can be controlled with medication. *See Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729-30 (8th Cir. 2003) ("[I]mpairments that are controllable by medication do not support a finding of total disability."). The ALJ properly considered Plaintiff's subsequent behavioral problems in school when assessing greater limitations in this area than those found by Dr. DeVore and Ms. Burner. (Tr. 20.)

Finally, Plaintiff briefly argues that the ALJ failed to conduct a credibility analysis of Ms. Brown and failed to discuss the factors set out in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). The ALJ specifically cited *Polaski* and the relevant regulations in her opinion. (Tr. 17, 25.) The ALJ made a finding that "the child's statements and testimony…are of only a limited credibility. They are only supported to the extent expressed in the domain limitations expressed previously.." (Tr. 25.) The ALJ was presumably referring to Ms. Brown, as Plaintiff did not testify at the hearing. The ALJ discussed Ms. Brown's testimony at length throughout her opinion. Notably, the ALJ considered Ms. Brown's lack of compliance with Plaintiff's medication, as noted in Dr. Nash's records. (Tr. 17, 351.) Ms. Brown also testified at the hearing that she has taken Plaintiff

off his medication at times. (Tr. 45-46.) The ALJ found that "this lack of compliance is not entirely consistent with a full effort to overcome the symptoms generally associated with attention deficit hyperactivity disorder." (Tr. 17.) The ALJ properly determined that Ms. Brown's noncompliance with Plaintiff's medications detracted from the credibility of her allegations of disabling ADHD. *See Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) ("[F]ailure to follow a prescribed course of remedial treatment without good cause is grounds for denying an application for benefits.").

Thus, the ALJ's finding that Plaintiff has less than marked limitations in the domain of Attending and Completing Tasks is supported by substantial evidence in the record as a whole.

*IV.B.ii.        Caring for Yourself*

This domain considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies his physical and emotional wants and needs in appropriate ways. 20 C.F.R. § 416.926a(k). A school-age child should be independent in most day-to-day activities (e.g., dressing himself, bathing himself), although he may still need to be reminded sometimes to do these routinely; should begin to recognize that he is competent in doing some activities and that he has difficulty with others; should be able to identify those circumstances when he feels good about himself and when he feels bad; should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior; should begin to demonstrate consistent control over his behavior, and should be able to avoid behaviors that are unsafe or otherwise not good for the child. 20 C.F.R. § 416.926a(k)(2)(iv).

Examples of limited functioning in this domain include situations where the claimant: (i) continues to place non-nutritive or inedible objects in his mouth; (ii) often uses self-soothing activities showing developmental regression (e.g., thumbsucking, re-chewing food) or has

restrictive or stereotyped mannerisms (e.g., body rocking, headbanging); (iii) does not dress or bathe himself appropriately for his age because he has an impairment that affects this domain; (iv) engages in self-injurious behavior; (v) does not spontaneously pursue enjoyable activities or interests; or (vi) has disturbance in eating or sleeping patterns.   20 C.F.R. § 416.926a(k)(3)(i)-(vi).

The ALJ stated that records from Dr. Nash dated January 20, 2010, reveal that Plaintiff sometimes wets himself, which indicates a deficit in his coping capacity.   (Tr. 23, 364.)   In addition, the records indicate that Plaintiff relied on his mother for dressing and bathing.   *Id.*   The ALJ stated that Plaintiff's more recent records do not indicate this to be the case anymore.   The ALJ stated that, as of September 19, 2012, "Ms. Nash" stated that Plaintiff was able to care for himself at an age-appropriate level.   (Tr. 23.)   The ALJ concluded that the overall records do not indicate Plaintiff has a marked limitation in this domain.   *Id.*   She found that Plaintiff has no limitations in this domain.   *Id.*

Plaintiff argues that the ALJ mischaracterized the evidence.   Specifically, Plaintiff notes that it was Ms. Burner and not Dr. Nash who found that Plaintiff was able to care for himself at an age-appropriate level in September 2012.   Plaintiff points out that Dr. Nash documented bedwetting and urinary accidents during the day as recent as June 2012.   (Tr. 342.)   Finally, Plaintiff cites Plaintiff's behavioral issues at school, including suspensions, as evidence of limitations in this domain.

The undersigned finds that the ALJ's determination in this domain is supported by substantial evidence.   It is true that the ALJ mistakenly referred to Ms. Burner as "Ms. Nash,"[4] but the ALJ was clearly referring to Ms. Burner's consultative examination that took place on September 19, 2012.   Although Ms. Brown reported to Dr. Nash that Plaintiff was still having

---

[4]   The fact these two women have the same first name may also have contributed to this mistake.

urinary accidents in June 2012, she did not report any such difficulties to Ms. Burner in September 2012.   Ms. Burner found that Plaintiff had no difficulties in adaptive functioning and was able to care for himself and his hygiene at an age appropriate level.   (Tr. 382.)   Ms. Burner also found that Plaintiff's insight and judgment were within the high average range based on testing she performed.   (Tr. 382.)   The ALJ properly accorded significant weight to Ms. Burner's opinion in making her determination, as Ms. Burner's opinion was supported by her examination.   The ALJ also considered the opinion of Dr. DeVore, who found Plaintiff had no limitation in this domain. (Tr. 23, 328.)   Finally, with regard to Plaintiff's behavioral problems, this evidence is indicative of limited functioning in the domain of Interacting and Relating with Others, which will be considered next.

*IV.B.iii.        Interacting and Relating with Others*

The ALJ found that Plaintiff had less than marked limitations in Interacting and Relating with Others.   (Tr. 21.)   Plaintiff argues that the ALJ mischaracterized the evidence in making this determination.

In the domain of Interacting and Relating with Others, the Commissioner considers how well a child initiates and sustains emotional connections with others, develops and uses the language of the child's community, cooperates with others, and responds to criticism.   20 C.F.R. § 416.926a(i).   A school-age child "should be able to develop more lasting friendships" with children his age; begin to understand how to work in groups to create projects and solve problems; have an increasing ability to understand another's point of view and to tolerate differences; and be "well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand."   20 C.F.R. § 416.926a(i)(2)(iv).

Examples of limited functioning in Interacting and Relating With Others include situations where the claimant: (i) does not reach out to be picked up and held by his caregiver; (ii) has no close friends, or his friends are all older or younger than the child; (iii) avoids or withdraws from people he knows, or is overly anxious or fearful of meeting new people or trying new experiences; (iv) has difficulty playing games or sports with rules; (v) has difficulty communicating with others; e.g., in using verbal and nonverbal skills to express himself, carrying on a conversation, or in asking others for assistance; or (vi) has difficulty speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a(h)(3)(i)-(vi).

The ALJ found that Plaintiff's limitations in this domain "are the only ones that seem to be worsening." (Tr. 21.) The ALJ noted that Ms. Brown testified that Plaintiff has social interaction deficits, including problems with behavior. (Tr. 21, 35-36, 43-44, 50.) The ALJ stated that Ms. Brown also testified that Plaintiff plays numerous team sports and plays basketball at least four hours per day. (Tr. 21.) The ALJ stated that the medical records do not demonstrate any social interaction difficulties that occurred while Plaintiff was playing these team sports. *Id.* The ALJ indicated that Plaintiff has a list of numerous school-related offenses and punishments and that it was noted he threatened another student on August 20, 2012. *Id.* She noted that Ms. Burner did not note substantial social functioning deficits and instead found Plaintiff was cooperative and had social language within normal limits. (Tr. 21, 382-83) The ALJ stated that she was giving some weight to Ms. Burner's opinion as it was consistent with the medical records. (Tr. 21.) However, the ALJ stated she was according greater weight to the opinion of Dr. DeVore that Plaintiff has less than marked difficulties interacting with others. *Id.*

The undersigned agrees with Plaintiff that the ALJ's finding that Plaintiff has less than marked limitations in this domain is not supported by substantial evidence.

First, as the ALJ acknowledged, the school records reveal that Plaintiff had significant behavioral problems resulting in disciplinary action. Plaintiff was suspended nineteen times during the 2011-2012 school year. (Tr. 342.) Incident reports from Plaintiff's schools during the period of October 2008 through November 2012 reveal discipline for the following types of offenses: screaming at a teacher (Tr. 206), defiance/disrespect (Tr. 220), physical aggression toward another student (Tr. 221, 222, 223, 224), and physical aggression toward a teacher (Tr. 228). The increase in Plaintiff's behavioral problems was also noted in Dr. Nash's most recent treatment notes dated June 19, 2012. (Tr. 342.) In fact, Dr. Nash referred Plaintiff to the psychiatry department at Washington University in August 2012 due to his "significant behavior problems at school (19 suspensions 2011-2012 school year) and at home." (Tr. 348.)

Second, the ALJ mischaracterized Ms. Brown's testimony regarding Plaintiff's participation in sports. Ms. Brown testified that Plaintiff had recently participated in boxing but was kicked out of the program after physically attacking another child. (Tr. 42.) Ms. Brown testified that Plaintiff had participated in t-ball at the age of four and football at the ages of seven and eight. (Tr. 46.) With regard to basketball, Ms. Brown testified that Plaintiff played basketball at the summer camp he was attending at the time of the hearing. (Tr. 47.) Ms. Brown also testified that Plaintiff was forced to leave the camp the week prior to the hearing due to behavioral problems. (Tr. 47.) Additionally, Ms. Brown testified that Plaintiff has no friends. (Tr. 42.) Ms. Brown's testimony does not support the ALJ's statement that Plaintiff "plays numerous team sports and plays basketball for four hours per day" (Tr. 21) without any difficulties. Ms. Brown's testimony similarly does not support the ALJ's ultimate finding that Plaintiff has less than marked limitations in the domain of Interacting and Relating with Others.

Third, the ALJ relied on the opinions of Ms. Burner and Dr. DeVore, but these sources did not have complete evidence of Plaintiff's behavioral problems before them. Ms. Burner authored her opinion on September 20, 2012, and indicated that she had reviewed the record. (Tr. 381.) Ms. Burner discussed the previously cited "Report of Results of Psychological-Educational Assessment" as it related to Plaintiff's academic performance and ability to pay attention as discussed above, but she did not discuss any of Plaintiff's behavioral problems or resulting disciplinary action. When discussing Plaintiff's social functioning, Ms. Burner simply noted that Plaintiff "reportedly grabs things from others, has trouble waiting his turn, and may get slightly verbally aggressive if he can't get his way." (Tr. 383.) This is not an accurate account of Plaintiff's nineteen suspensions the prior school year. Consequently, it does not appear that Ms. Burner reviewed Plaintiff's most recent school records. Dr. DeVore reviewed the record on January 4, 2012. (Tr. 325-30.) Dr. DeVore noted that Plaintiff "says inappropriate things a[t] school and has been getting misdemeanor conduct reports." (Tr. 327.) Because Dr. DeVore reviewed the record in January 2012, he was not aware of the full extent of Plaintiff's disciplinary problems that school year.

For the reasons discussed above, there is not substantial evidence to support the ALJ's finding that Plaintiff had a less than marked limitation in the domain of Interacting and Relating with Others. There is also no evidence, however, that Plaintiff has an "extreme" limitation in that domain. Though an extreme limitation does not necessarily mean a total lack or loss of ability to function, it is a limitation that interferes very seriously with a child's ability to independently initiate, sustain, or complete activities. *Scales v. Barnhart*, 363 F.3d 699, 703-04 (8th Cir. 2004). It is a rating given to the "worst limitations." 20 C.F.R. § 416.926a(3)(i). Despite Plaintiff's disciplinary problems, he remained in a regular classroom in a gifted program. In addition, Ms.

Burner noted on examination that Plaintiff was cooperative, his eye contact and affect were appropriate, and his social language functioning was within normal limits.  (Tr. 382.)   Plaintiff reported to Ms. Burner that he has "numerous friends," and "enjoys many activities."   (Tr. 383.) Plaintiff's limitations, therefore, are not among the "worst limitations."

## V.   Conclusion

In sum, the ALJ did not err in her findings that Plaintiff had less than marked limitations in the domains of Attending and Completing Tasks and Caring for Yourself.   Her error as to the domain of Interacting and Relating with Others is therefore rendered harmless because the evidence described above demonstrates that Plaintiff does not have an "extreme" limitation in that domain.   *See T.M. by Turner v. Astrue*, No. 4:11CV766 CDP, 2012 WL 4092457 (E.D. Mo. Sept. 17, 2012) (finding that substantial evidence did not support ALJ's determination that claimant had less than marked limitations in domain of Attending and Completing Tasks, but that error was harmless because the evidence showed that claimant did not have marked or extreme limitations in any other domains).   Thus, substantial evidence supports the ALJ's decision finding Plaintiff not disabled.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of March, 2016.